IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| STAR INSURANCE COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | 1:19-CV-1243-RP |
| | § | |
| MARIA MONTOYA, *individually and as* | § | |
| *representative of the Estate of Jamie Montoya, Sr.*, | § | |
| JAIME MONTOYA, JR., JAVIER MONTOYA, | § | |
| PEPE LE'PEW OILFIELD RENTAL, INC., | § | |
| RSP PERMIAN, LLC, and WAR HORSE | § | |
| SERVICES, LLC, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court is a motion for summary judgment filed by Plaintiff Star Insurance Company ("Star Insurance"). (Dkt. 31). Defendants Pepe Le'Pew Oilfield Rental, Inc. ("Pepe Le'Pew") and RSP Permian, LLC ("RSP Permian") each filed a response. (Dkts. 32, 33). Star Insurance filed a reply. (Dkt. 34). Defendants Maria Montoya, *individually and as representative of the Estate of Jamie Montoya, Sr.*, Jaime Montoya, Jr., Javier Montoya, ("Montoya Defendants") and War Horse Services, LLC, ("War Horse") did not file responses to Star Insurance's motion. Having considered the parties' submissions, the record, and the applicable law, the Court will grant the motion for summary judgment.

## I.   BACKGROUND

This is an insurance coverage dispute relating to an underlying lawsuit about the death of Mr. Jamie Montoya, Sr., in the 118th District Court of Martin County, Texas (the "underlying lawsuit").[1]

---

[1] The underlying lawsuit is *Maria Montoya, individually, and as representative of The Estate of Jaime Montoya, Sr., Jaime Montoya, Jr., and Javier Montoya v. RSP Permian, LLC, RSP Permian, Inc., War Horse Services, LLC, and Pepe Le'Pew Oilfield Rental, Inc.*, Cause Number 7485.

(Underlying State Pet., Dkt. 31-4). In the underlying lawsuit, Maria Montoya, Jaime Montoya, Jr.,

and Javier Montoya (together, "underlying plaintiffs") allege that on May 3, 2018, Jamie Montoya, Sr.

("Mr. Montoya") was working in the course and scope of his employment as an employee of Pepe

Le'Pew at RSP Permian's wellsite when he died due to the inhalation of hydrogen sulfide gas. (*Id.* at

¶ 4.1, 4.4) (alleging that "Jamie Montoya, Sr. died as a result of an accidental mishap as a result of

inhalation of hydrogen sulfide gas"). War Horse was allegedly present at the wellsite providing

oilfield services. In that lawsuit, underlying plaintiffs assert several causes of action against Pepe

Le'Pew, RSP Permian, and War Horse (together, "underlying defendants"). (*Id.* at ¶ 5.1-5.5).

Star Insurance issued commercial general liability and excess liability insurance policies to Pepe

Le'Pew. (Dkts. 31-2, 31-3). RSP Permian is an additional insured on the policy. (Dkt. 31-2, at 57–

61). The commercial general liability policy was effective for the period of May 4, 2017 through May

4, 2018 ("the CGL policy"). (*Id.* at 3). RSP Permian is a named additional insured on the CGL

policy. (*Id.* at 57–61). The CGL policy does not apply to bodily injury "which would not have

occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage,

migration, release or escape of 'pollutants' at any time" (the "pollution exclusion"). (*Id.* at 40). The

commercial excess liability insurance policy was effective for the period of May 4, 2017 through May

4, 2018 ("Excess Policy"). (Dkt. 31-3, at 4). The Excess Policy adopts the same terms as the CGL

policy. (Dkt. 31-3, at 18). It is uncontested that the policies prohibit coverage for death arising out of

exposure to pollutants. (MSJ, Dkt. 31, at 7; RSP Permian Resp., Dkt. 33, at 1; *see generally* Pepe

Le'Pew Resp., Dkt. 32).

The policies' benefits include defense of covered claims and indemnity for covered claims.

(Dkts. 31-2, 31-3). Star Insurance seeks a declaration that there is no coverage under the policies and

that it is not obligated to defend or indemnify the underlying defendants. (MSJ, Dkt. 31, at 17). Pepe

Le'Pew, RSP Permian, and War Horse have all request a defense and indemnity from Star Insurance for the underlying lawsuit. (*Id.* at 10).

## II. LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotations and footnote omitted). When reviewing a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Further, a court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Furthermore, the nonmovant is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the

motion for summary judgment. *Id.* After the nonmovant has been given the opportunity to raise a

genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will

be granted. *Miss. River Basin Alliance v. Westphal,* 230 F.3d 170, 175 (5th Cir. 2000).

### III. DISCUSSION

"In determining whether an insurer's duty to defend is triggered, Texas courts strictly apply

the 'eight-corners rule,' which looks only to the four corners of the most recent complaint in the

underlying action as well as the four corners of the insurance policy." *City of College Station v. Star Ins.*

*Co.*, 735 F.3d 332, 336 (5th Cir. 2013). A "duty to defend means the insurer will defend the insured

in any lawsuit that 'alleges and seeks damages for an event potentially covered by the policy,' while

the duty to indemnify means the insurer will 'pay all covered claims and judgments against an

insured.'" *Colony Ins. Co. v. Peachtree Const., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011).

"[I]f the insurer can show that *all* of the alleged liability falls outside of the scope of coverage

or within the scope of an exclusion, the insurer has no duty to defend." *Id.* at 326–37. "Texas courts

do not look to conclusory assertions of a cause of action in determining a duty to defend. Instead,

they look to see if the facts giving rise to the alleged actionable conduct, as stated within the eight

corners of the complaint, constitute a claim potentially within the insurance coverage." *Cornhill Ins.*

*PLC v. Valsamis, Inc.*, 106 F.3d 80, 85 (5th Cir. 1997).

The "facts actually established in the underlying suit control the duty to indemnify." *D.R.*

*Horton-Tex., Ltd. v. Market Intern. Ins. Co., Ltd.*, 300 S.W.3d 740, 744 (Tex. 2009). However, "[t]he

duty to indemnify is justiciable before the insured's liability is determined in the liability lawsuit when

the same reasons that negate the insurer's duty to defend likewise negate the possibility the insurer

will ever have a duty to indemnify." *Id.* at 745 (quoting *Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955

S.W.2d 81, 84 (Tex. 1997)); *see also Nautilus Ins. Co. v. Country Oaks Apartments*, Ltd., 566 F.3d 452,

458 (5th Cir. 2009) ("However, where an exclusion that precludes the duty to defend would also

preclude indemnity, courts are permitted to decide the duty to indemnify in advance of the underlying liability lawsuit's end.").

### A.  Pepe Le'Pew's Response

#### 1.  Duty to Defend

It is uncontested that the CGL and Excess Policy prohibit coverage for death arising out of exposure to pollutants. (MSJ, Dkt. 31, at 7; RSP Permian Resp., Dkt. 34, at 1, 4; *see generally* Pepe Le'Pew Resp., Dkt. 32). In the underlying lawsuit, it is alleged that Mr. Montoya's death was caused by "an accidental mishap as a result of inhalation of hydrogen sulfide gas." (Dkt. 31-4, at 4.1, 4.4). Star Insurance asserts that hydrogen sulfide gas qualifies as a pollutant under the policies, which neither Pepe Le'Pew nor RSP Permian contest. (MSJ, Dkt. 31, at 19–20; *see generally* Pepe Le'Pew Resp., Dkt. 32). The underlying lawsuit centers on the allegation that Mr. Montoya's death was caused by hydrogen sulfide gas and brings claims of negligence for acts "which proximately caused the injuries and damages sustained by [Mr. Montoya]." (Underlying State Pet., Dkt. 31-4, at 6).

Pepe Le'Pew challenges that there was hydrogen sulfide gas present at the wellsite or that it was the cause of Mr. Montoya's death. (Pepe Le'Pew Resp., Dkt. 32, at 2) ("[T]he evidence at the underlying trial of the case will reveal that there was not any hydrogen sulfide gas present."). As a result, Pepe Le'Pew asserts that the "pollution exclusion of the policy will ultimately have no applicability at the close of the evidence in the underlying case." (*Id.*). Under the eight corners rule, "factual allegations are considered without regard to their truth or falsity." *Ewing Construction Co., Inc. v. Amerisure Insurance Co.*, 20 S.W.3d 30, 33 (Tex. 2014) (internal citations and quotation marks omitted). As a result, the Court will not consider Pepe Le'Pew's assertions that the allegations about hydrogen sulfide gas are false.

Pepe Le'Pew also argues that negligence related to the escape of hydrogen sulfide gas is only one of many different claims alleged in the underlying lawsuit, and suggests that the pollution

exclusion does not exclude coverage asserted claims such as "negligent hiring," "negligent in failing to inspect," and "negligent in failing to provide adequate safety equipment." (Pepe Le'Pew Resp., Dkt. 32, at 2). Pepe Le'Pew argues that, regardless of the presence of hydrogen sulfide gas, these other claims are covered and require Star Insurance to defend and indemnify Pepe Le'Pew. (*Id.* at 3).

Under the eight corners rule, "[i]t is not the cause of action alleged that determines coverage but the facts giving rise to the alleged actionable conduct." *Nat. Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). The injury and damages in the underlying lawsuit are entirely premised on factual allegations about Mr. Montoya's death being caused by hydrogen sulfide gas. (*See, e.g.*, Underlying State Pet., Dkt. 31-4, at 4–5) (stating that underlying defendants "failed to adequately train its employees . . . regarding exposure to deadly hydrogen sulfide gas" and "were negligent in failing to provide adequate safety equipment . . . when [they] knew of the potential for exposure to hydrogen sulfide gas"). At the very least, the claims "are not mutually exclusive; rather they are related and interdependent," to the allegations about hydrogen sulfide gas. *Commercial Union Ins. Co. v. Roberts*, 7 F.3d 86, 89–90 (5th Cir. 1993). Pepe Le'Pew has not shown that there are facts in the underlying pleadings related to an independent cause other than hydrogen sulfide gas. Accordingly, Star Insurance does not owe the underlying defendants a duty to defend because of the pollution exclusions in the CGL and Excess Policies.

## 2. Duty to Indemnify

The duty to indemnify is triggered by the actual facts establishing liability in the underlying suit. *D.R. Horton-Tex.*, 300 S.W.3d at 744. However, "[t]he duty to indemnify is justiciable before the insured's liability is determined in the liability lawsuit when the same reasons that negate the insurer's duty to defend likewise negate the possibility the insurer will ever have a duty to indemnify." *Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997); *Brit UW Ltd. v. FPC Masonry LP*, No. 1:18-CV-876-RP, 2020 WL 1902563, at *9 (W.D. Tex. Feb. 13, 2020) ("The court agrees, and finds

that, for the same reasons provided for finding Brit UW owes no duty to defend, Brit UW has

shown it would be impossible to show that coverage would not be excluded under the Policies.").

Pepe Le'Pew argues that it should be determined in the underlying case whether hydrogen

peroxide sulfide was present and negligently escaped in the underlying case before this Court

determines whether Star Insurance has a duty to indemnify. (Pepe Le'Pew Resp., Dkt. 32, at 3).

However, because the underlying state petition is entirely premised on claims tied to exposure to

hydrogen peroxide sulfide, it would be impossible for the CGL and Excess Policies to require Star

Insurance to indemnify the underlying defendants. If the underlying lawsuit determines that there

was no negligent exposure of hydrogen peroxide sulfide, as Pepe Le'Pew contends, then the

underlying defendants will not owe any damages requiring indemnification. Accordingly, Star

Insurance does not owe a duty to indemnify.

## B.  RSP Permian's Response

RSP Permian does not dispute that the CGL and Excess Policy's pollution exclusion bars

coverage based on the factual allegations pleaded in the underlying lawsuit. (RSP Permian Resp.,

Dkt. 33, at 1). However, RSP Permian requests that "(1) any declaration regarding coverage is

limited to the allegations in the live pleading attached as Exhibit 2 to Star's MSJ, such that RSP

retains the right to resubmit a demand for defense and indemnity if any newly asserted facts in a

subsequent pleading invoke coverage; and (2) Star's broad prayer request does not lead to an award

of attorneys' fees against RSP, which Star's counsel has expressly indicated Star is not seeking." (*Id.*

at 1–2).

In its reply, Star Insurance states that it is "not seeking a declaration that would be applicable

to a hypothetical amended complaint in the Underlying Lawsuit." (Reply, Dkt. 34, at 8). Star

Insurance further emphasizes that courts may not "imagine factual scenarios which might trigger

coverage." (Reply. Dkt. 34, at 8) (quoting *Guar. Nat'l Ins. Co. v. Azrock Indus.*, 211 F.3d 239, 243 (5th

Cir. 2000)). Star Insurance also states that the underlying lawsuit's deadline to amend pleadings has already passed. (Reply, Dkt. 34 at 8; Underlying Scheduling Order, Dkt. 34-1).

The parties appear to agree that the insurance dispute at hand is only litigating the applicability of the policies to the facts pleaded in the underlying lawsuit. This Order only evaluates the merits of the dispute at hand, i.e. the applicability of the policies to the live pleadings and alleged facts in the underlying lawsuit, which is consistent with RSP Permian's request and consistent with this Order's declaration. Whether different factual allegations and claims could require Star Insurance to defend or indemnify the underlying defendants is a separate, hypothetical dispute.

Further, the Court finds that RSP Permian's request regarding attorney's fees would be more appropriate in response to a motion for attorney's fees, which is not before the Court.

## IV. CONCLUSION

For the reasons stated above, **IT IS ORDERED** that Star Insurance's Motion for Summary Judgment, (Dkt. 31), is **GRANTED**. Star Insurance is entitled to summary judgment. The Court **hereby DECLARES** that Star Insurance owes no duty to defend or to indemnify any parties against the claims made in the underlying lawsuit.

Final judgment will be entered in a separate order.

**SIGNED** on March 8, 2021.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE